**James Herman BOSTIC,**
**Plaintiff,**

v.

**TRUE DETECTIVE MAGAZINE CO.,**
**Defendant.**

**No. 72 Civ. 2646.**

United States District Court,
S. D. New York.

Sept. 10, 1973.

James Herman Bostic, pro se.

London, Buttenwieser & Chalif, New York City, for defendant.

MEMORANDUM

LASKER, District Judge.

James Herman Bostic brought this suit against True Detective Magazine seeking damages for libel. Both parties have moved for summary judgment. The facts are undisputed.

The December 1969 issue of True Detective Magazine carried an article entitled "Prosperity Betrayed Dixies' Big Time Heisters," which stated that several persons, including Bostic, had gone to trial in Federal District Court in Nashville, Tennessee, on charges of bank robbery, conspiracy to commit bank robbery, conspiracy to commit murder to avoid apprehension and murder. The charges referred to in the article were contained in an indictment which in fact accused Bostic only of bank robbery and conspiracy to commit bank robbery. Among the overt acts committed in furtherance of the conspiracy, the indictment charged that persons other than Bostic conspired to murder and murdered a co-conspirator whom they sus-

pected was about to betray them to the police. Since Bostic was incarcerated at the time of the murder and since eventually (more than a year after the article was published) the government conceded that he had no responsibility for the murder, Bostic maintains that the article was libelous.

Although the article was not technically accurate, in that the conspirators were charged with bank robbery, murder being alleged only as an overt act, nor was it factually accurate, in that as the government conceded Bostic was not involved in the murder, the record before us establishes beyond doubt that Bostic cannot recover for libel as a result of its publication.

At the time the article was published (December 1969) and, in fact, until the case in which Bostic was a defendant was argued before the Supreme Court in April 1971, the position of the government was that, although Bostic was incarcerated when the murder was committed, he shared responsibility for it as a member of the ongoing conspiracy. This view was accepted by the District Court Judge and by the Court of Appeals. The latter said in its opinion affirming Bostic's conviction:

> "We recognize as to appellants Bostic and Cole that there is no specific testimony that they had knowledge of the plan to do away with Ferguson. But there is ample evidence that they knowingly joined and participated in a conspiracy to commit armed robbery of banks. We conclude that the murder actually committed must be viewed as within the reasonable contemplation of those who formulated and participated in the bank robbery scheme and was in furtherance of the plan." United States v. Etheridge, 424 F.2d 951, 965 (6th Cir. 1970), writ of certiorari dismissed as improvidently granted sub nom. Bostic v. United States, 402 U.S. 547, 91 S. Ct. 2174, 29 L.Ed.2d 102 (1971).

In light of this finding, the article's characterization of the charges against

Bostic and his co-defendants cannot be said to have been made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). As a result, recovery for libel is barred by the First Amendment.

The *New York Times* standard applies to this case, despite the fact that Bostic is not a public official or a public figure. In Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), a plurality of the Court, consisting of Chief Justice Burger and Justices Brennan and Blackmun, held that standard to be applicable to all cases involving an event of public or general interest. Justice Black concurred in the judgment on the view long held by both himself and Justice Douglas (who did not participate in the decision) that "the First Amendment does not permit the recovery of libel judgments against the news media even when statements are broadcast with knowledge that they are false." *Id.* at 57, 91 S.Ct. at 1826. Justice White also concurred in the judgment, but on a more limited basis than that espoused by the plurality opinion, namely that, "absent actual malice as defined in New York Times Co. v. Sullivan, the First Amendment gives the press and the broadcast media a privilege to report and comment upon the official actions of public servants in full detail, with no requirement that the reputation or the privacy of an individual involved in or affected by the official action be spared from public view." *Id.* at 62, 91 S.Ct. at 1829.

By any of the views expressed by the Justices who voted to apply *New York Times* to the *Rosenbloom* case, the *Times* standard governs the case at hand. To take the most narrow approach, that of Justice White, the publication involved here was "constitutionally privileged" inasmuch as it consisted of "discussion of the official actions of public servants." *Id.* at 61, 91 S.Ct. at 1828. The fact that the "offi-

cial actions" in question were in a different area of law enforcement than was involved in *Rosenbloom* does not alter the result.

Accordingly, since the slight negligence involved in True Detective Magazine's portrayal of Bostic's involvement in the murder does not approach "actual malice", we conclude that, as a matter of law, publication of defendant's article was constitutionally protected and not actionable as libel.

Defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied.

1t is so ordered.